# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# BECKLEY DIVISION

IN RE: LARRY EDWARD WOOD, et al.,

        Debtors.

U.S. DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT (HUD),

        Appellant,

v.                                                CIVIL ACTION NO. 5:19-cv-00302
                                                    (Consolidated with Civil Action No. 5:19-cv-303)

LARRY EDWARD WOOD and
JESSICA ANN WOOD,

        Appellees.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed the *Memorandum Opinion and Order* (Document 1-1), the *Judgment Order* (Document 5-14), *Opening Brief of the Appellant U.S. Department of Housing and Urban Development (HUD)* (Document 6), *Brief of the Debtors/Appellees, Larry Edward Wood and Jessica Ann Wood* (Document 7), and *Reply Brief of the Appellant U.S. Department of Housing and Urban Development (HUD)* (Document 10). After careful consideration, the Court finds that the decision of the Bankruptcy Court should be affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 9, 2008, the Plaintiffs borrowed $39,739.44 to purchase a modular/mobile home.[1] In the case of default, the loan was insured by the United States Department of Housing

---

[1] The facts of this case are uncontested.

and Urban Development (HUD). The Plaintiffs ultimately defaulted on the loan on July 31, 2014. HUD paid the deficiency remaining after default on November 18, 2015—an amount totaling $23,066.66. On November 20, 2015, HUD notified the Plaintiffs of the deficiency and made a demand for payment.

In December 2015, HUD issued the Plaintiffs a Notice of Intent to Collect by Treasury Offset, informing them that the United States Department of the Treasury (the "Treasury") could offset the Plaintiffs' tax overpayment amounts against the debt owed to HUD. On February 23, 2017, the Treasury Offset Program used $9,961.00 of federal tax overpayment to offset the amount of debt owed to HUD, leaving a remaining balance owed to HUD of $15,486.47 plus interest.

On March 21, 2018, the Plaintiffs filed a bankruptcy petition, and subsequently filed their federal and state income tax returns on March 26, 2018. The returns demonstrated a federal income tax overpayment of $6,086 and a state income tax overpayment of $316. The Treasury used the income tax overpayment to offset the Plaintiffs' remaining debt to HUD on April 4, 2018. No offset was made using the state tax overpayment.

The Plaintiffs filed a complaint on May 17, 2018, seeking avoidance of HUD's lien and refund of the offset funds remitted to HUD. The Bankruptcy Court entered a Memorandum Opinion on March 31, 2019, and a Judgment Order on April 15, 2019, ordering the United States to pay the Plaintiffs $6,086. On April 15, 2019, the United States appealed the decision of the bankruptcy court.

**STANDARD OF REVIEW**

"When reviewing a decision of the bankruptcy court, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal."

*Paramount Home Entm't Inc. v. Circuity City Stores, Inc.*, 445 B.R. 521, 526−27 (E.D. Va. 2010) (citing *In re Webb*, 954 F.2s 1102, 1103−04 (5th Cir. 1992)). Legal conclusions are reviewed *de novo* and factual findings are reviewed for clear error. *In re Harford Sands Inc.*, 372 F.3d 637, 639 (4th Cir. 2004). A clearly erroneous factual finding exists when the reviewing court "is left with the definite and firm conviction that a mistake has been committed" after considering all the evidence. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. United State Gypsum Co.*, 333 U.S. 364, 365 (1948)). For mixed questions of fact and law, the factual portions are reviewed for clear error and the legal portions are reviewed *de novo*. *Gilbane Bldg. Co. v. Federal Reserve Bank of Richmond, Charlotte Branch*, 80 F.3d 895, 905 (4th Cir. 1996).

## DISCUSSION

Federal law permits setoffs, meaning "entities that owe each other money [can] apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1996) (quoting *Studley v. Boylston Nat. Bank*, 229 U.S. 523, 528 (1913)). Section 553(a) of the Bankruptcy Code governs setoffs, and states in pertinent part:

> (a) Except as otherwise provided in this section and sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . .

11 U.S.C. § 553(a). A valid setoff requires proof of four elements: (1) the creditor's claim arose before commencement of the case; (2) the creditor's debt to the debtor arose before the

3

commencement of the case; (3) the claim and debt must be mutual; and (4) the claim must be valid and enforceable. *Id.*; *see also U.S. Dept. of Agriculture Rural Housing Svc. v. Riley*, 485 B.R. 361, 365 (W.D. Ky. 2012). "Section 553 does not actually create any setoff rights, but merely preserves the setoff rights that exist under applicable nonbankruptcy law." *In re Addison*, 533 B.R. 520, 525 (Bankr. W.D. Va. 2015), *aff'd*, No. 1:15-cv-00041, 2016 WL 223771 (W.D. Va. Jan. 19, 2016); *see also Strumpf*, 516 U.S. at 20.

The Tax Offset Program (TOP) allows the Federal Treasury to apply tax overpayments to pre-existing debts owed to federal agencies—in this case, HUD. 26 U.S.C. § 6402. Section 6402(d), which outlines the rule for collection of debts owed to federal agencies, provides:

> (1) In general. —Upon receiving notice from any Federal agency that a named person owes a past-due legally enforceable debt . . . to such agency, the Secretary shall—
>
> (a) reduce the amount of any overpayment payable to such person by the amount of such debt;
> (b) pay the amount by which such overpayment is reduced under subparagraph (a) to such agency; and
> (c) notify the person making such overpayment that such overpayment has been reduced by an amount necessary to satisfy such debt.

26 U.S.C. § 6402(d); *see In re Sexton*, 508 B.R. 646, 525 (Bankr. W.D. Va. 2014) (Connelly, J.).

However, Section 522 of the Bankruptcy Code allows debtors to "exempt certain property from the bankruptcy estate, meaning the debtor retains that property outside the reach of creditors." *United States v. Copley*, 591 B.R. 263, 277 (E.D. Va. 2018). Section 522 exemptions apply to "any property that is exempt under [f]ederal law . . . or [s]tate or local law that is applicable on the date of the filing of the petition. . ." 11 U.S.C. § 522(b)(3). The local law involved in this case is W. Va. Code § 38-10-4, which provides in pertinent part:

4

> Pursuant to the provisions of 11 U.S.C. § 522(b)(1), this state specifically does not authorize debtors who are domiciled in this state to exempt the property specified under the provisions of 11 U.S.C. § 522(d).
>
> Any person who files a petition under the federal bankruptcy law may exempt from property of the estate in a bankruptcy proceeding the following property:
>
> (a) The debtor's interest, not to exceed twenty-five thousand dollars in value, in real property or personal property that the debtor or a dependent of a debtor uses as a residence . . .
>
> (e) the debtor's interest, not to exceed in value eight hundred dollars plus any unused amount of the exemption provided under subsection (a) of this section in any property.

W.Va. Code § 38-10-4.

"Once a debtor files a bankruptcy petition, the automatic stay of 11 U.S.C. § 362(a) arises to protect debtors by providing them with 'a breathing spell' and also to protect creditors by 'promoting orderly and fair distribution among creditors.'" *Addison*, 533 B.R. at 524 (quoting *Shaw v. Ehrlich*, 294 B.R. 260, 267 (W.D. Va. 2003). The automatic stay "protects debtors not only from the commencement or continuation of legal actions against them, but also from any acts to obtain possession of, create or enforce liens against, or collect assets included in the debtor's estate." *Sexton*, 508 B.R. at 657 (noting that the "stay is the most powerful protection the Bankruptcy Code affords debtors").

These statutes give rise to two issues in the present case: (1) whether a debtor's tax overpayment becomes property of the estate and hence protected by the stay, and (2) whether, if part of the debtor's estate, the debtor may exempt the overpayments under § 522 of the Bankruptcy Code and thereby defeat a governmental creditor's right to setoff under § 553 of the Bankruptcy Code and the TOP codified at 26 U.S.C. § 6402.

5

The Bankruptcy Court held that the Debtors' tax overpayment became property of the estate protected by the stay because it vested in the estate at midnight on December 31, 2017, and because the treasury did not act to offset the debt owed to HUD until after the Debtors' bankruptcy petition was filed. Furthermore, the Bankruptcy Court, following the case law within the Fourth Circuit, held that the Debtors' right to exempt their tax overpayment under § 522 trumps the governmental right of offset under § 553 and § 6402. The Bankruptcy Court noted that "since the Woods listed their anticipated 2017 federal tax refund on their Schedule A/B and exempted portions of it on Schedule C, those exempted portions are not available for setoff by HUD. The nonexempted portions, however, would, *inter alia*, be available for setoff should HUD wish to pursue a stay lift." (Bankr. Op. at 6.) The Bankruptcy Court also held that "§ 522(c) [of the Bankruptcy Code] prevents a creditor from exercising its setoff rights against properly exempted tax overpayments." *Id.* at 7.

After careful consideration of the relevant issues, the Court finds that the decision of the Bankruptcy Court should be affirmed.

A. *The Tax Overpayment Became Part of the Bankruptcy Estate*

The Court must first determine whether the Debtors' tax overpayment became part of the bankruptcy estate, subject to the protections of the automatic stay. *Copley*, 591 B.R. at 277; *Addison*, 533 B.R. at 526−27. Courts have held that a tax overpayment becomes property of the taxpayer "at midnight on December 31 of the taxable year in which the payment occurred." *Copley*, 591 B.R. at 278; *Sexton*, 508 B.R. at 662. "Absent specific action by the United States regarding the Debtors' overpayment—i.e., absent the United States completing the statutorily

authorized offset under § 6402—before midnight on December 31 [of the taxable year] the Debtors' property interest in the overpayment vested at that time." *Copley*, 591 B.R. at 278.

Moreover, because the government had not acted to set off the overpayment by the time the Debtors filed their bankruptcy petition, the tax overpayment became subject to the provisions of the Bankruptcy Code upon the filing of the bankruptcy petition. *Copley*, 591 B.R. at 277 ("Upon filing for bankruptcy, all of the Debtors' property, including the . . . overpayment, became part of the bankruptcy estate, and by extension, subject to the provisions of the Bankruptcy Code."). If the taxpayer files for bankruptcy prior to the government employing the offset provisions, "the debtor's interest in the property at that time vests in the bankruptcy estate. If, thereafter, the government wants to use the overpayment for a setoff under section 6402, it must first get relief from the stay or act under an applicable exception enumerated in section 362(b)." *Sexton*, 508 B.R. at 658 n.14.

The Court recognizes that there is a circuit split on this issue.[2] Some courts have held that tax overpayments are contingent property interests that do not become part of the bankruptcy estate if the tax overpayment is less than preexisting debt owed. *In re Gould*, 401 B.R. 415, 425 (9th Cir. B.A.P. 2009), *aff'd* 603 F.3d 1100 (9th Cir. 2010), *cert. denied*, 562 U.S. 1030 (2010); *In re Luongo*, 259 F.3d 323, 335 (5th Cir. 2001). Section 6402 allows the United States to offset tax overpayments against pre-existing liabilities owed to it. 26 U.S.C. § 6402. Additionally, under the Bankruptcy Code, § 553 allows creditors to offset debts that existed prior to filing a petition

---

2 "*Compare Sexton*, 508 B.R. at 662-64 (ruling that the government's post-petition setoff of the debtor's tax overpayment to non-tax federal debt was a violation of the automatic stay because the debtor's interest in her tax overpayment was property of the bankruptcy estate and was properly exempted by the debtor), *with Riley*, 485 B.R. at 365-67 (ruling that the debtors were never entitled to a tax refund because their governmental debts exceeded their tax overpayment and therefore, the debtors had no refund that became property of the bankruptcy estate that could be claimed as exempt)." *Addison*, 533 B.R. 520, 528.

for bankruptcy. 11 U.S.C. § 553(a). These provisions have been read together to hold that such tax overpayments constitute contingent claims and do not become part of the bankruptcy estate. *See Gould*, 401 B.R. 415; *Luongo*, 259 F.3d at 335 (noting that if "the prior unpaid tax liability exceeded the amount of the overpayment, the debtor was not entitled to a refund and the tax refund did not become property of the estate"); *Riley*, 485 B.R. at 365−67.

However, a "majority of courts" have determined that tax overpayments become part of the bankruptcy estate. *Copley*, 591 B.R. at 279; *Sexton*, 508 B.R. at 668; *Addison*, 533 B.R. at 531. That tax overpayments become part of the bankruptcy estate is further bolstered by other provisions of the Bankruptcy Code. Under the Bankruptcy Code, "Section 541(a) defines property of the estate liberally to include all of the debtor's property interests, no matter who controls or possesses the property or where it is located." *Addison*, 533 B.R. at 529 (quoting *Sexton*, 508 B.R. at 658); *see also Owen v. Owen*, 500 U.S. 305, 308 (1991); *Copley*, 591 B.R. at 279. "Section 541(b) sets forth certain property interests that are excluded from the bankruptcy estate. This court finds it instructive that nowhere in Section 541(b) . . . does Congress exclude a debtor's interest in his tax overpayment or right to a refund." *Addison*, 533 B.R. at 529 (quoting *Sexton*, 508 B.R. at 662); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 (1983); *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993) ("[T]he term property has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed. . . . In fact, every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541.") (internal quotation marks omitted).

As such, the Court finds that the Debtors' tax overpayment was property that became part of the bankruptcy estate on December 31, 2017, and protected by the automatic stay at the time the Debtors filed the bankruptcy petition on March 21, 2018.

B. *Section 522 Exemption Trumps Section 553 Setoff in This Case*

The tax overpayment at issue in this case is subject to the competing provisions of § 522 and § 553 of the Bankruptcy Code. "An apparent conflict exists between § 553, which unqualifiedly preserves the right of offset, and § 522(c), which provides that property claimed exempt is not liable for prepetition debts." *Copley*, 591 B.R. at 281. Courts have reached conflicting conclusions concerning both the interaction between § 522 and § 553 and the "effect of a taxpayer's filing bankruptcy while the government is in the process of executing an offset pursuant to § 6402." *Id.* at 274−75.[3]

The Fourth Circuit has not yet resolved the conflict between the exemption provisions under § 522 and tax offset provisions under § 553 and § 6402.[4] *Copley*, 591 B.R. at 274. However, "it is settled law within the Fourth Circuit that a properly-claimed exemption trumps a creditor's right to offset mutual prepetition debts and liabilities." *Sexton*, 508 B.R. at 662 (citing *In re Moore*, 350 B.R. 650 (Bankr. W.D. Va. 2006), 656; *In re Ward*, 210 B.R. 521, 536 (Bankr. E.D. Va. 1997)); *see also Copley*, 591 B.R. at 279; *Addison*, 533 B.R. at 531.

---

3 *Compare, e.g.*, *Addison*, 533 B.R. at 520 (concluding § 6402 setoff rights are subject to the automatic stay); *Sexton*, 508 B.R. at 646 (concluding that a properly claimed exemption under § 522 supersedes § 553), *with Gould*, 401 B.R. at 424 (holding that under § 6402 a debtor is only entitled to a tax refund to the extent her overpayment exceeds her unpaid tax liability); *Luongo*, 259 F.3d at 335 (holding that a tax refund does not vest in the bankruptcy estate until after application of § 6402(a), such that only the remainder after applying the offset is part of the bankruptcy estate protected by the stay); *Riley*, 485 B.R. at 365.

4 However, a case involving the issue is currently pending appeal to the Fourth Circuit, so this may be soon resolved. *See Copley v. United States*, 591 B.R. 263, No. 18-2347 (4th Cir., Nov. 9, 2018).

This Court will review the Bankruptcy Court's decision to "disallow a setoff for abuse of discretion." *Copley*, 591 B.R. at 275; *see also In re Larbar Corp.*, 177 F.3d 439, 447 (6th Cir. 1999)); *Gould*, 401 B.R. at 421. On review, "a bankruptcy court necessarily abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings." *Gould*, 401 B.R. at 429. In a factually analogous case, the reviewing court determined "[i]t would be difficult to find that a court weighed these competing interests, as the Bankruptcy Court did here, abuses its discretion when ultimately deciding between allowing or disallowing a § 553 offset." *Copley*, 591 B.R. at 282. For the following reasons, the Court affirms the Bankruptcy Court's finding that the exemption provision under § 522 applies to disallow a setoff under § 553 in this case.

First, courts have construed the general rule established by § 553(a)—that the Bankruptcy Code does not affect setoff rights existing prior to the filing of a bankruptcy petition—to be permissive rather than mandatory. *Strumpf*, 516 U.S. at 20; *Copley*, 591 B.R. at 276. "Historically, allowing setoff under the Bankruptcy Code remained within the equitable discretion of the court presiding over the bankruptcy action, rather than mandatory." *Copley*, 591 B.R. at 284 (citing *Cumberland Glass Mfg. Co. v. De Witt*, 237 U.S. 447, 455 (1915); *In re Alexander*, 255 B.R. 145, 147 (W.D. Ky. 1998)). This permissive quality allows courts to recognize when compelling circumstances exist for disallowing the setoff under § 553 if the debtor properly exempts the property prior to the setoff being invoked. *Id.* In this case, the competing exemption provisions of § 522 constitute one such compelling circumstance.

Second, when faced with conflicting statutes, the more specific statute governs over the more general statute. *Morton v. Mancari*, 417 U.S. 535, 550-51 (noting that "a specific statute

will not be controlled or nullified by a general one"). In this case, the "general rule" contained in § 553 is less specific than the exemption provision under § 522, which looks to specific state and local laws to determine the applicable exemption rules. *See* 11 U.S.C. § 522(b)(3); W.Va. Code § 38-10-4. Under this reasoning, the exemption provision under § 522 applies to the Debtors' tax overpayment in this case.

When two statutes conflict, the court should interpret the statutes in a way that gives effect to both provisions. *Husted v. A. Philip Randolph Institute*, 138 S.Ct. 1833, 1842 (2018) (quoting *Ricci v. DeStefano*, 557 U.S. 557 (2009)). While this argument cuts both ways, "the majority position [is] that interpreting § 522 to supersede § 553 would give meaning to both provisions in more circumstances than the reverse." *Copley*, 591 B.R. at 286. "Were the Court to allow § 553 to supersede § 522, the likely effect would be to broadly nullify exemptions claimed under § 522." *Id.* at 286.

Last, as noted by the Bankruptcy Court, interpreting the exemption provisions in § 522 to trump the offset provisions in § 553 furthers the overarching goals of federal bankruptcy law. The Supreme Court has recognized two fundamental goals of federal bankruptcy law: giving the debtor a fresh start and ensuring efficiency and fairness among creditors. *Stellwagen v. Clum*, 245 U.S. 605, 617 (1918); *Katchen v. Landy,* 382 U.S. 323, 328 (1966); (Bankr. Op. at 6) ("Rather than allow a chaotic race to judgment or other remedies, the Code established procedures for, priorities of, and practices relating to, creditors and their respective recoveries from the estate. Indeed, . . . a contrary result poses a considerable threat to settled bankruptcy principles and policies."). As such, finding that § 522 applies in this case furthers the overall goals of the Bankruptcy Code.

In sum, the Court finds that § 522 of the Bankruptcy Code trumps the offset provisions of § 553 of the Bankruptcy Code and § 6402 of the TOP. As such, the Bankruptcy Court correctly concluded that the Debtors are entitled to recover the $6,086 tax overpayment at issue in this case.

C. *Stay Provisions under Section 326 Specifically Exempt "Income Tax Liability"*

The stay provisions of the Bankruptcy Code further reinforce the Court's conclusion that the Debtors' tax overpayments were not subject to the offset. Under the Bankruptcy Code, § 326(b)(26) "constrains the reach of the automatic stay by excepting from violating the automatic stay, the setoff under applicable nonbankruptcy law of an income tax refund . . . against an income tax liability." *Addison*, 533 B.R. at 529 (quoting *Sexton*, 508 B.R. at 662). Because the statutory provision is worded to except an income tax refund against *income tax liability*, presumably debts owed to other federal agencies are not included in the exception. *Id.* (quoting *Sexton*, 508 B.R. at 663) (noting that "[u]nder the statutory canon of construction *expressio unius est exclusio alterius*, Congress's specific inclusion of the phrase 'income tax liability' excludes the application of the provision to non-tax liabilities"). Because Congress did not choose to omit "the modifier 'income tax' before the word 'liability'" the Court agrees with other decisions within this circuit finding that debts owed to other federal agencies are not exempted from the automatic stay. *Sexton*, 508 B.R. at 663. As such, the Court finds that the Debtors' tax overpayment was protected by the automatic stay.

D. *Retroactive Annulment of the Stay*

The United States argues in the alternative that even if the automatic stay applied and was violated by offsetting the tax overpayment, the United States nevertheless has a right to seek a

12

retroactive modification of the automatic stay to allow the offset. However, the Court finds that retroactive annulment of the automatic stay is improper in this case.

The bankruptcy judge has the discretion to decide whether to lift the automatic stay. *Sexton*, 508 B.R. at 666. Equity "weighs heavily *against* the party seeking an annulment" of an automatic stay. *Id.* Courts have found it proper to retroactively annul an automatic stay for innocent violations—such as where the creditor is unaware of the automatic stay or the violation of the automatic stay is a technicality. *Id.* In this case, however, the United States was aware that the Debtors had filed for bankruptcy yet moved to intercept and withhold the Debtors' tax overpayment anyway. *Id.* (finding that an analogous fact pattern did not warrant retroactive annulment of the automatic stay).

Thus, the Court finds that retroactive annulment of the automatic stay is not equitable in this case. Accordingly, the Bankruptcy Court's decision to return the tax overpayment to the Debtors is affirmed.

## CONCLUSION

Wherefore, after careful consideration the Court **ORDERS** that the decision of the Bankruptcy Court be **AFFIRMED**.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record and to any unrepresented party.

ENTER: December 16, 2019

*[signature: Irene C. Berger]*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA